***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff is Celena Hurt.
2. The employer is ACS, Inc., which is no longer in business.
3. The carrier on the risk was Hartford Insurance Company.
4. At all relevant times, defendant-employer regularly employed three or more employees, and plaintiff and defendants are bound by the North Carolina Workers' Compensation Act.
5. Plaintiff sustained an injury by accident on October 30, 1995, and defendants accepted plaintiff's claim as compensable by filing a Form 60 on December 1, 1995.
6. Plaintiff's average weekly wage was $282.00, which yields a compensation rate of $188.01.
7. At the hearing before the Deputy Commissioner, the parties stipulated into evidence plaintiff's medical records, vocational rehabilitation records and Industrial Commission forms.
8. The issues before the Commission are whether plaintiff unjustifiably refused suitable employment and whether defendants' Form 24 Applications to Terminate Payment of Compensation should have been approved.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the compensable injury by accident, plaintiff was a thirty-five year-old female who is a high school graduate. On October 30, 1995 plaintiff was working in the course and scope of her employment for defendants when a board die fell on her head. Plaintiff was knocked to the floor and struck her head on the floor.
2. Plaintiff was taken by ambulance to Iredell Memorial Hospital with complaints of head and back pain. The EMS report reveals plaintiff suffered no hematoma, fracture, or dislocation and she was found by EMS personnel to be awake, oriented and responsive.
3. Plaintiff began treating with Dr. Lori Schneider on the date of her injury, and Dr. Schneider's October 30, 1995 medical record indicates plaintiff reported losing consciousness for forty minutes as a result of her injury.
4. Another CT scan of plaintiff's head performed on November 8, 1995 was normal. Dr. Schneider continued to treat plaintiff through June 24, 1996 at which time Dr. Schneider's diagnoses were major depression related to head trauma, headaches probably due to depression and hypertension, and alterations of consciousness of unclear etiology. Dr. Schneider felt that plaintiff would benefit from a "brain injury rehabilitation program," and plaintiff was referred to Dr. David Wiercisiewski for such a program.
5. Dr. Wiercisiewski stated that there is no objective way to identify or measure any of the symptoms plaintiff experienced, including photophobia, irritability, headaches, memory loss, sleep disturbance, or anxiety. He felt plaintiff's complaints remained entirely subjective throughout the course of his treatment of plaintiff.
6. Dr. Wiercisiewski testified that he was the physician primarily in charge of managing plaintiff's symptoms related to her October 30, 1995 injury during the three years he treated plaintiff prior to October 20, 1999.
7. Dr. Wiercisiewski no longer considered himself plaintiff's treating physician in connection with her October 30, 1995 injury because he had no communication with plaintiff after October 20, 1999 when he released plaintiff from his care at maximum medical improvement. Dr. Wiercisiewski imposed restrictions against numerous physical activities and allowed plaintiff to return to work for twenty hours per week at a maximum of four hours per day, advancing to eight hours per day by adding one hour each week.
8. Dr. Wiercisiewski testified that the fact he had not seen plaintiff since releasing her in October, 1999 prevented him from offering an opinion as to plaintiff's applicable work restrictions from the summer of 2001 to the present.
9. Dr. Wiercisiewski referred plaintiff to Dr. Anne Hawes for treatment of plaintiff's headaches on May 26, 1999, and Dr. Hawes assumed the primary care of plaintiff since that time.
10. Over her course of treatment of plaintiff, Dr. Hawes prescribed for plaintiff the following: Inderal, Zomig, Verapamil, Indocin, Midrin, Catalan, Neurontin, Cafergot, and Topamax for headaches and Xenical for obesity. None of the medications Dr. Hawes prescribed alleviated plaintiff's headaches.
11. Vocational rehabilitation specialists have attempted to return plaintiff to gainful employment, but plaintiff remains unemployed. She was placed in a job bagging groceries but had to quit because of her headaches. Plaintiff has applied for hundreds of jobs and has made reasonable efforts to find employment.
12. Beginning in the summer of 2001 defendants referred plaintiff to Expediter Employment Consultants (Expediter). Expediter is a company that assists in returning disabled individuals or individuals injured on the job to gainful employment and is based out of Pittsburgh, Pennsylvania. Pursuant to its promotional materials which are a part of the evidentiary record, Expediter seeks to "provide meaningful employment to the injured and disabled through technology-based, transitional return-to-work programs."
13. Expediter provides a program through which an injured worker goes back to work for a new employer performing "telework" at home, including data processing, simple surveys, polling, and market research. The telework positions secured through the expedited employment program do not involve telephone sales. These telework positions generally involve between 500 and 850 hours of on-the-job training provided by Expediter.
14. Positions offered to injured employees through Expediter are subsidized positions where the injured employee returns to work for a "bridge employer." A bridge employer is usually a larger corporation that hires telecommunications employees to conduct surveys or perform similar work. In the case at bar, EMR Communications and DiCenzo Personnel Specialists were the bridge employers who offered employment to plaintiff through Expediter.
15. Prospective employees are informed at the time they fill out applications that if they are selected for a position through Expediter, their employment will be subsidized by the "time of injury employer" or its insurance carrier. In this case the time of injury employer was ASC, Incorporated, and its carrier, Hartford Insurance, would have paid all of plaintiff's salary while she worked for the bridge employer.
16. On August 29, 2001, the position of at home surveyor working 20 hours per week with EMR Communications was offered to plaintiff by Expediter. Upon review of the job, Dr. Hawes was unable to comment on plaintiff's possible return to work and believed that plaintiff would benefit from a functional capacity evaluation. Plaintiff declined the job offer.
17. On June 14, 2002, plaintiff had an independent medical examination by Dr. Gerald Aronoff, a specialist in pain management. Dr. Aronoff felt that plaintiff could return to work with certain restrictions outlined in his functional capacity evaluation. Dr. Aronoff stated that if plaintiff were unable to return to work because of her headaches, he recommended that she be treated in a behavioral and rehabilitative functional restoration program.
18. Plaintiff was offered a second position for 20 hours per week through Expediter with DiCenzo Personnel Specialists. This job was approved by Dr. Aronoff. Plaintiff also refused this job.
19. Defendants filed a Form 24 Application to Terminate Compensation on December 10, 2001 and again on August 1, 2002. The Commission's Executive Secretary's Office denied both applications.
20. The two jobs described above involved telephonic surveying and were subsidized positions. The subsidizing employer can cease the subsidy payments at any time. If the subsidy payments end, the new employer can end the employment of the injured worker without notice.
21. The Full Commission finds by the greater weight of the evidence that the temporary, part-time positions offered plaintiff are not available in the competitive job market and were not suitable employment. Therefore, plaintiff was justified in her refusal of such employment.
22. Plaintiff remains totally disabled and unable to earn wages in any employment and is therefore entitled to continued payments of total disability compensation from defendants.
23. Defendants have not defended this action without reasonable grounds.
 ***********
Based on the foregoing finding of facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 30, 1995, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendants. N.C. Gen. Stat. § 97-2(6).
2. Where plaintiff's wages must be subsidized by defendants in order for plaintiff to retain her employment, that employment does not constitute a meaningful return to work or proof that plaintiff has regained pre-injury wage-earning capacity. Plaintiff was justified in refusing to accept subsidized employment through Expediter, which was not suitable employment. N.C. Gen. Stat. § 97-32.
3. Plaintiff remains totally disabled and unable to earn wages in any employment and therefore is entitled to payment of total disability compensation, payable by defendants, at the compensation rate of $188.01 per week until such time as she returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. The defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants' Form 24 Applications to terminate or suspend payment of compensation were properly denied by the Executive Secretary and defendants are not authorized to suspend payment of compensation to plaintiff.
2. Defendants shall continue to pay to plaintiff total disability compensation in the amount of $188.01 per week until such time as she returns to work or upon further order of the Commission.
3. A reasonable attorney's fee in the amount of 25% of the compensation due plaintiff is hereby approved for plaintiff's counsel. Past due amounts, if any, shall be deducted from the sums due plaintiff and paid directly to plaintiff's counsel; thereafter plaintiff's counsel shall receive every fourth check due plaintiff.
4. Defendants shall pay the costs due to the Commission, including an expert witness fee of $350.00 to Dr. Wiercisiewski and $1,000.00 to Dr. Gerald M. Aronoff, if not already paid.
5. Plaintiff shall continue to cooperate with any reasonable request by the vocational rehabilitation specialist assigned to work with her by defendants.
This the ___ day of November 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/mb